UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SONITA M. GIBSON,

    Plaintiff,

    v.                             Case No. 3:25-CV-401 JD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Sonita Gibson applied for disability insurance benefits under Title II of the

Social Security Act, alleging disability beginning in December 2021. Her claim was rejected,

leading to a review by an Administrative Law Judge ("ALJ") who concluded that Plaintiff was

not disabled. The Appeals Council denied her request for review, and Plaintiff now seeks judicial

review. For the reasons below, the Court will remand the case to the Social Security

Administration for further proceedings.

### A. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as

the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits

if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The

threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C.  The ALJ's Decision**

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "Migraine Headaches; Minimal Multilevel Cervical Spondylosis; a Major Depressive Disorder; and a Generalized Anxiety Disorder." (ALJ's Decision, R. at 12.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*, R. at 13.) As relevant to Plaintiff's appeal, the ALJ found that Plaintiff's headaches and migraines weren't equivalent to Listing 11.02 as they were occurring "with essential frequency of two a month without status migrainosus,[1] not intractable and otherwise unspecified, but aggravated by stress or otherwise other complaints cited herein, and improved with conservative treatment." (*Id.*) That is, according to the ALJ, the migraines weren't as frequent or as severe as required for a finding of medical equivalence.

At the hearing, Plaintiff testified that multiple ailments prevent her from working. She said that in 2022 she attempted to work for four hours a day but she could not continue due to her migraines as she would miss days or go home early. (R. at 56–57.) Plaintiff stated that she has fifteen or more migraines per month, and that a single migraine can last for five days, resulting in migraines during most of the month (R. at 60–61.) Stress and fatigue trigger the occurrence of her migraines. (R. at 62.) Plaintiff testified that, on average, she may have one or two good days a week where she feels ok and is able to complete household chores, but her migraines "always come back." (*Id.*) Generally, her pain from migraines is 6 on a 10-point scale. (R. at 66.) She

---

[1] "Status migrainosus is a migraine attack that lasts longer than 72 hours. . . . A typical migraine usually goes away within hours or a couple of days."
Status Migrainosus, https://my.clevelandclinic.org/health/diseases/status-migrainosus (last visited June 3, 2026).

4

explained that her medication provides "some relief from the pain" but also causes side effects such as lethargy, hours of sleepiness, and nausea. (R. at 63.)

Plaintiff also testified that she has been diagnosed with depression. (*Id.*) She said her depression causes her to feel no hope for the future because of the difficulty living with the pain. According to Plaintiff, she finds everything to be overwhelming. (*Id.*) Plaintiff indicated that she does not engage with her friends or family. (R. at 67.)

In determining Plaintiff's residual functional capacity ("RFC"),[2] the ALJ recounted Plaintiff's testimony (ALJ's Decision, R. at 17–18) and found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" (*Id.*, R. at 18). At the same time, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the frequency and severity reflected within the medical evidence and other evidence in the record." (*Id.*)

In particular, the ALJ found that Plaintiff's migraines weren't as severe as she claimed and that her medications were largely effective. The ALJ pointed out that Plaintiff was treated for headaches ("migraines without status migrainosus of unspecified type and not intractable") in February 2020 with medications, without side effects, and the headaches were mild and improving, recurring two to three times a month. (*Id.*, R. at 19.) The ALJ observed that the symptoms review showed that, except for headaches, Plaintiff denied any concerns with fatigue, chest pain, edema, abdominal pain, dizziness, insomnia, anxiety, and depression. Furthermore,

---

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

clinical exam findings reflected full orientation, appropriate mood and affect, normal insight and judgment, and there was no indication of acute distress. (*Id.*)

The ALJ next considered that in May 2021, Goshen Physicians "noted ongoing moderate headaches without change with some days better than others, . . . due to possible issues with stress or weather." (*Id.*) The headaches were reported as occurring twice per month. (*Id.*) The ALJ also observed that Plaintiff reported doing well on her mental health medications. However, Plaintiff did complain of phonophobia, photophobia, nausea and vomiting. Although she also reported a flight of ideas and mood swings related to stress, she did not present in acute distress and she was not anxious or suffering from obsessive thoughts or suicidal ideations. (*Id.*, R. at 20.)

Also in May 2021, Plaintiff sought a second opinion regarding her migraine headaches from Dr. David Dyck. The ALJ remarked that the medical notes show that Plaintiff complained of suffering about two migraines a month, which at times lasted four days. The notes also stated that although Plaintiff had been offered Aimovig injections by her previous primary care provider, she declined because she was stable with the medication she was taking at the time. (*Id.*) The medical report characterized Plaintiff's migraines as controlled and at times lasting four days "per claimant's report." (*Id.*)

The ALJ pointed out that Plaintiff sought and was rehired for part-time employment from January 2022 through April 2022, working four hours a day.

The ALJ noted that Plaintiff saw Dr. Dyck again in April 2022 and reported that migraine medications were not working as well as they had before. Plaintiff again refused an Aimovig injection stating this time that she did not tolerate it well in the past. The ALJ observed that Plaintiff presented on exam in no acute distress. Plaintiff's medications were changed, and over

the next thirteen months there were no documented follow-up visits or treatment with any medical providers. (*Id.*, R. at 20–21.)

In June 2023, Plaintiff went to the ER with complaints of vomiting, neck pain, abscessed tooth with possible sinus infection, and migraines. (*Id.*, R. at 21.) As the ALJ observed, the medical report states that Plaintiff came in with a tooth issue and neck pain but there was no evidence of acute problems, and she was discharged in stable condition. (*Id.*; *see also* R. at 628–29.)

The ALJ also considered the January 2023 report of the physical consultative examiner Dr. Stephen Parker, finding that his medical source statement was "consistent with the essentially minimal to unremarkable objective clinical exam findings . . . and also generally supported by and consistent with the essentially minimal to unremarkable exam results reflected within the overall treatment records." (*Id.*, R. at 22.)

Likewise, the ALJ was persuaded by the medical source statement (also issued in January 2023) of the examining psychologist Dr. Amanda Mayle because it was "supported by the examiner's clinical exam findings and consistent with the overall objective medical evidence of the record." (*Id.*) Dr. Mayle stated that Plaintiff has adequate immediate and recent memory with marginal remote memory, adequate insight, and judgment, and ability to sustain attention. According to Dr. Mayle, Plaintiff was fully oriented, her mood was depressed and affect flat, but her speech was normal, relevant, and coherent. Plaintiff's thought content did include overvalued ideas, suicidal ideation, obsessions, and preoccupations, but her thought process was coherent and within normal limits in tempo. Plaintiff was cooperative, her hygiene was good, and she was dressed appropriately for the weather. (*Id.*)

7

The ALJ was not persuaded by a June 2023 medical source statement provided by Dr. Dyck. Relying on Plaintiff's reports, Dr. Dyck stated that Plaintiff has 15 headaches a month that last six hours each despite use of medication and that she expects to miss four days a month. The ALJ found this statement to be inconsistent with the objective record and lack of treatment following Plaintiff's April 2022 appointment with Dr. Dyck. Besides, according to the ALJ, Dr. Dyck based his report primarily on Plaintiff's subjective allegations, which she found to be inconsistent "with the objective medical evidence of record, which supports the existence of migraine headache, but does not support the severity or duration of migraines alleged." (*Id.*, R. at 23.)

Finally, the ALJ found persuasive the opinions of the state agency physicians and psychologists, who determined that, despite her severe migraines and mental health issues, Plaintiff retained the functional capacity to perform medium work with certain limitations. (*Id.*)

In evaluating Plaintiff's mental functioning under the Paragraph B criteria, the ALJ determined that Plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace. (*Id.*, R. at 15.) The ALJ based her finding "within [Plaintiff's] testimony and within overall discussions of evidence including a limited clinical exam findings of deficit, and the daily activity reports." (*Id.*, R. at 14.) As for adapting or managing herself, the ALJ found that Plaintiff has a mild limitation, which according to the ALJ is consistent with her "involvement in a wide range of daily activities when she is not having a migraine." (*Id.*)

Further explaining her findings, the ALJ stated that Plaintiff is able to care for herself, her husband, and her elderly parents, that she cooks and does household chores every other day for about an hour and a half and two hours, respectively. She drives, goes out and shops alone or with her husband for one to two hours once a week. Plaintiff spends time reading and can pay

attention, finish what she starts and follow instructions and recipes, when not having a headache. At the same time, the ALJ emphasized that Plaintiff "does not do very well in dealing with stress or with changes in routine." (*Id.*, R. at 15.) The ALJ further underscored the effects of stress on Plaintiff when discussing the RFC assessment, this time noting that "stress is a factor triggering and/or increasing migraines." (*Id.*, R. at 24.)

> The ALJ concluded that Plaintiff has the RFC to perform
>
> medium work[3] . . . except as reduced by the following. The claimant can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds and the claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant is also able to tolerate occasional exposure to noise, fumes, odors, dusts, gases, and poor ventilation and can tolerate no more than occasional exposure to hazards. The claimant can carry out simple instructions.

(*Id.*, R. at 27.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: laundry worker, linen room attendant, and package sealing machine tender. (*Id.*, R. at 25; R. at 73.) The VE testified that employers expect employees to stay on task 90% of the workday and do not tolerate more than two absences a month on a continuing basis. (R. at 74.) Relying on the VE's testimony, the ALJ concluded that considering Plaintiff's "age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 26.) As a result, the ALJ found Plaintiff to be not disabled.

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

**D. Discussion**

In her appeal, Plaintiff raises four arguments. First, Plaintiff contends that her migraines are medically equivalent to Listing 11.02. Next, according to Plaintiff, the ALJ's subjective symptoms analysis was patently wrong because she relied on her own determination of Plaintiff's symptoms. Her last two arguments are interrelated: she claims that the ALJ failed to properly consider evidence supporting a finding of disability and failed to account in the RFC for her recurring migraines and mental functioning limitations.

The Court will discuss only Plaintiff's argument that the ALJ failed to account for all of Plaintiff's limitations in the RFC, as that argument warrants remand.

**(1) *The RFC Assessment***

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id.*

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*,

11

142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

Plaintiff argues that the RFC fails to accommodate all of her physical and mental imitations. In particular, she contends that limiting her to carrying out "simple instructions" does not adequately account for her recurring migraines, her moderate limitations in concentration, persistence, and pace (often referred to as "CPP" in social security parlance), or her mild limitations in adapting and managing herself. The Court agrees.

Starting out with mental functioning, the ALJ found that Plaintiff has moderate CPP limitations and mild limitations in adapting and managing herself. In both instances, the ALJ explained that these limitations are not pervasive as Plaintiff is able to independently attend to her personal and self-care needs and also cares for her husband and her elderly parents; she can cook meals for about ninety minutes every other day and do household chores at the same intervals; she can also drive and go out alone and shop independently for about one to two hours every week. Additionally, she spends time sewing, is able to pay bills, can pay attention, finish tasks she starts, and can follow written or spoken instructions, including recipes, when not experiencing a headache. Of course, these findings are of limited value in determining Plaintiff's ability to sustain employment as they represent only a snapshot of Plaintiff's functioning. *See, e.g.*, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."). But even with those abilities, the ALJ recognized, in the context of mental functioning, that Plaintiff "does not do

very well in dealing with stress or with changes in routine." (ALJ's Decision, R. at 15 (citing to the record).) According to the ALJ, the RFC restriction to "carrying out simple instructions" accommodates Plaintiff's limitations related to CPP and stress. (*Id.*)

Yet beyond this assertion, the ALJ has supplied no path of reasoning by which the Court can ascertain the logic of such a conclusion. By itself, a limitation to simple instructions, does not account for claimant's difficulties with concentration, persistence, and pace or the ability to handle stress during the workday. *See, e.g.*, *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations.") (collecting cases). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). That is, while the instructions may be simple and thus can be learned quickly, the Court needs assurance that the RFC accounts for Plaintiff's actual ability to concentrate, persist, and maintain pace and handle stress while working full time. Yet the hypothetical did not direct the VE to consider the extent of Plaintiff's difficulties with CPP or her ability to deal with stress. *See Winsted*, 923 F.3d at 477 ("Additionally, where a claimant's limitations are stress-related, as [the plaintiff's] appear to be, the hypothetical question should account for the level of stress a claimant can handle."). Nor did the ALJ include in the hypothetical or the RFC the underlying conditions so as to fully inform the VE about the scope of Plaintiff's limitations. For example, in discussing both CPP and adapting and managing oneself, the ALJ noted that Plaintiff has difficulty dealing with stress or with changes in routine, but the RFC does not reflect these findings. *Cf. O'Connor-Spinner*, 627 F.3d at 620 ("Although the limitations on concentration, persistence and pace were not

mentioned in the hypothetical, the underlying conditions were." (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)).

Relatedly, the ALJ failed to account in the RFC for Plaintiff's migraines insofar as they're triggered by stress. Plaintiff testified that she suffers fifteen migraines per month and a single migraine can last for five days. (R. at 60–61.) This testimony did not persuade the ALJ, who found that, while Plaintiff's impairments could cause the alleged symptoms, Plaintiff's allegations concerning their severity and functional impact were not entirely consistent with the record. That said, the ALJ did not rule out that Plaintiff suffers from migraines. In fact, in reviewing the medical record, the ALJ noted that Plaintiff had been diagnosed with migraines without status migrainosus. The ALJ also found that "stress is a factor triggering and/or increasing migraines." (ALJ's Decision, R. at 24.) In considering Dr. Mayle's medical source statement, which the ALJ found to be supported by Dr. Mayle's examination and consistent with the overall medical record and therefore persuasive, the ALJ pointed to Dr. Mayle's report that Plaintiff acknowledged that medication was helping her with her migraines but was "not taking away all of her symptoms." (*Id.*, R. at 22.) Even in rejecting Dr. Dyck's medical source statement, the ALJ did not negate that Plaintiff suffers migraines, although she again observed that their severity and duration was less intense than alleged: "the record documents a history of migraine headaches under limited control . . . but does not support the severity or duration of migraines alleged." (*Id.*, R. at 23.) Furthermore, in listing Plaintiff's abilities in relation to CPP and adapting and managing herself, the ALJ noted that she "is reported to do good with following written/spoken instructions and a recipe when not having a headache." (*Id.*, R. at 15.) What's more, the ALJ accounted for reported "environmental migraine triggers" by limiting Plaintiff to "occasional exposure to noise, fumes, odors, dusts, gases, and poor ventilation . . .

14

and no more than occasional exposure to workplace hazards." (*Id*., R. at 24.) But in relation to stress, although the ALJ "acknowledged [Plaintiff's] reports and testimony that stress is a factor triggering and/or increasing migraines," she limited her only to "carrying out simple instructions." (*Id*.) Yet a limitation to simple instructions, without more, does not account for migraines, especially given the ALJ's recognition that Plaintiff's headaches impede her ability "with following written/spoken instructions and a recipe" (*id*., R. at 15). *See Schmidt v. Colvin*, No. 14-C-115, 2014 WL 6610988, at *7 (E.D. Wis. Nov. 20, 2014) ("Simple, repetitive, unskilled work can require fast paced and high stress work.").

The errors here are not harmless. The ALJ's failure to include Plaintiff's migraine-, CPP- and stress-related limitations in the RFC is significant. The VE testified that being off task more than 10% of a workday or missing work more than twice per month repeatedly is work-preclusive. As a result, it's important to understand to what extent, if at all, the ALJ believed that Plaintiff's limitations in concentration, persistence, and pace would interfere with her ability to perform work. The same is true of stress since the ALJ recognized it as a trigger for Plaintiff's migraines. Therefore, the VE should have been told about Plaintiff's limitations that the ALJ herself endorsed. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).

In his response brief, the Commissioner suggests that a ruling for Plaintiff would amount to endorsing a categorical rule "to the effect that an ALJ may never accommodate a moderate

limitation in concentration, persistence, or pace with a restriction on skill level." (Pl.'s Resp. Br., DE 21 at 14.) But that's not the case. The question in deciding the sufficiency of the RFC is not whether the ALJ used or failed to use a certain phrase or term, but "whether the ALJ's RFC limitations are accurately tied to the record evidence." *Dawn F. v. Saul*, No. 1:20-CV-1374, 2021 WL 4445002, at *17 (S.D. Ind. Sept. 8, 2021). "Ultimately, whether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis. *Rhodes v. Comm'r of Soc. Sec.*, No. 1:24-CV-401-ALT, 2025 WL 2751139, at *4 (N.D. Ind. Sept. 25, 2025). Here, the error is that the ALJ did not explain the connection between Plaintiff's limitations and the supposed accommodation, and the link between them is not so obvious as to be self-evident. *See id.* at *5 ("[T]here is no indication that the ALJ's limitation to 'simple instructions' accounted for the ALJ's observation that Rhodes 'does not do well with stress or change in routine,' as the ALJ did not offer an explanatory connection between 'simple instructions' and low stress or infrequent change." (citations to the record omitted)). To the contrary, without more, the Court is left with the impression that the ALJ may have assumed that individuals prone to stress or experiencing moderate difficulties in CPP are able to perform adequately when the task is simple. *See Holland v. Comm'r of Soc. Sec.*, 195 F. Supp. 3d 1011, 1022 (N.D. Ind. July 19, 2016) (noting that the ALJ "merely assumed that a limitation to simple, repetitive work automatically accounted for [the plaintiff's] moderate deficits in concentration and attention").

The Commissioner also argues that the ALJ committed no error because she relied on the state agency psychologists who found that Plaintiff could handle detailed, but not complex, tasks whereas the ALJ further restricted Plaintiff's abilities to simple tasks. (Def.'s Resp. Br., DE 21 at 15.) The problem with that argument is that the Court cannot discern the basis on which the state

agency psychologists, and consequently the ALJ, determined that Plaintiff can manage the stresses involved in performing work in a way that will not trigger the occurrence of Plaintiff's migraines. After all, although the ALJ generally accepted the findings of the state agency psychologists, she specifically disavowed their determination that Plaintiff's migraines aren't as severe as she claims because "she did not want to return to her [primary care physician] because she knows he will refer her to a neurologist." (ALJ's Decision, R. at 24.) According to the ALJ, the source of this report is unclear given that the Agency "provided no context for such statement" (*id.*), and the ALJ was right to refuse adopting speculative reasoning.

The Seventh Circuit makes few exceptions to the requirement that all the claimant's limitations be included in the RFC so that the VE can consider the available jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Finally, in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the court upheld an ALJ's decision where the ALJ "justified the conclusion that the claimant could work at a consistent pace by expressly incorporating the doctor's recommendation that the claimant engage in only simple, repetitive tasks (which, according to the doctor, accounted for the claimant's pace-related limitations)." *Moy*, 142 F.4th at 555. But none of these scenarios apply here, given that nothing in the RFC can be read as a substitute to account for the effects of Plaintiff's exposure to stress and for moderate CPP limitations. Accordingly, a remand is required.

17

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 8, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court